**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER A.,[1]** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 22 C 5178** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed his application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§416(i), 423, 1381a, 1382c, over two and a half years ago in July of 2020. (Administrative Record (R.) 262-74). He claimed that he had been disabled since November 24, 2017 (R. 262, 268) due to: "Lower back pain, herniated discs, sciatic pain" (R. 303). Over the next two years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on September 22, 2022. The parties consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) on September 27, 2022, and the Executive Committee reassigned the case to me on October 11, 2022. [Dkt. ##7, 8]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an

---

[1]Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

order affirming the decision.

## I.

### A.

Plaintiff was born on September 13, 1987 (R. 262), making him just thirty years old when he claims he became unable to work. He says he injured his back while installing fencing by falling down a hill three or four times. (R. 404). The company reassigned him to a desk job while his workers' compensation case was pending, but he only lasted a week. He said the company didn't find him suitable for that work (R. 62-63), and his back was locking up while he worked. (R. 73). The plaintiff claims no treatment has helped him. Surgery in 2019 didn't help at all. (R. 65). A spinal cord stimulator didn't help, and it was taken out due to an infection. (R. 66). He takes Norco three to five times a day (R. 66-67), and also Cyclobenzaprine and Meloxicam. (R. 67). He's also had injections. (R. 67-68).

Medically, the plaintiff has what his treating doctor and his neurosurgeon have consistently termed "small" disc herniations (R. 892, 1056, 1094, 1688) that are "really not too bad." (R. 934, 1075, 1669, 1757). According to the medical records, plaintiff did achieve improvement from physical therapy and relief from injections. (R. 844, 1625, 1640,1680, 1683, 1685, 1705). Indeed, the reports from his treating physician indicate consistently improved range of motion and ambulation through 2019 (R. 1625, 1627, 1630, 1640-41, 1642, 1644, 1647, 1649, 1651), 2020 (R. 1590, 1593, 1595, 1597, 1599, 1602, 1604, 1606, 1609, 1612, 1616), and 2021 (R. 1743, 1745, 1747, 1749, 1751, 1754, 1757, 1760, 1762). Neither plaintiff's treating physician nor his neurosurgeon felt he was unable to work, but that he was suited to lighter duty than his previous, rather strenuous, fencing work. (R. 892, 1018-19, 1042-43, 1048).

### B.

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairment: lumbar degenerative disc disease with radiculopathy." (R. 24). The ALJ said the plaintiff's depression and personality disorder caused no more than mild limitations in any area of functioning – understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; adapting or managing oneself – and was, therefore, nonsevere. (R. 24). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ said she "pa[id] particular attention to listings 1.15, 1.16, and 11.14." (R. 25-26).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to perform light work with some additional limitations:

> can never climb ladders, ropes or scaffolds and he can occasionally climb ramps and stairs. The [plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. The [plaintiff] is limited to work with a sit/stand option such that every thirty minutes he is allowed to alternate between sitting or standing for five minutes and would remain on task.

(R. 26). Next, the ALJ summarized the plaintiff's complaints. She noted that the plaintiff testified that a back injury had left him unable to work since November 24, 2017, and that despite ongoing treatment, had pain that he rated as an eight to ten in severity that radiated into his right leg. The plaintiff explained that surgery in 2019 was ineffective and he could not stand or walk for more than twenty to thirty minutes at one time due to pain. Plaintiff said that he could sit for ten to fifteen minutes at one time and lift ten pounds, but had difficulty with household chores. He added that he had fallen several times in the past due to his back condition and that his back locked up several

3

times a day. (R. 26-27). The ALJ then found that while the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; . . . the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 26).

The ALJ then went on to conduct a lengthy review of the medical record. She noted that plaintiff sought treatment for back pain in November 2017 after falling down a hill at work. Plaintiff had a reduced range of motion in his lumbar spine, but no swelling, gross abnormalities, or neurological abnormalities were noted on exam. X-rays showed facet arthropathy at the L5 and S1 levels with mild degenerative endplate changes at the L3 through the S1 levels of the plaintiff's lumbar spine. Plaintiff then began physical therapy and reported some improvement in his back pain. January 2018 exam showed a restricted range of motion in his lumbar spine, but neurological and motor strength were intact. By February 2018, plaintiff had attended twenty physical therapy sessions, and he reported eighty to ninety percent improvement. Gait was normal, his range of motion was decreased and his sensation was normal in all areas. At about the same time, the plaintiff reported little improvement in his symptoms despite physical therapy to another provider. (R. 27). Exam showed a good range of motion with five out of five strength, normal neurological functioning restriction through March 2018. (R. 28).

In March 2018, an MRI showed mild multilevel spondylosis that was most significant at the L3 through the S1 levels, a disc herniation at the L4-5 level and a disc herniation at the L5-S1 level of the lumbar spine. There was no evidence of spinal canal or lateral recess stenosis at any level. Plaintiff's treating physician noted tenderness in the lumbar spine but a smooth gait. A

neurosurgeon noted tenderness in the lumbar spine and a reduced range of motion, but negative straight leg raise testing. Plaintiff could heel and toe walk and his gait, motor strength, sensation, and reflexes were all normal. The neurosurgeon recommended more physical therapy; he had no explanation for plaintiff's radiating pain down his right leg. Plaintiff had two injections in the following two months but continued to report back pain. Plaintiff's neurosurgeon noted the plaintiff would pursue a spinal cord stimulator with his treating doctor and that he was limited to light duty work with no bending or twisting more than three times an hour, and had to alternate between sitting and standing every thirty to forty-five minutes. (R. 28)

The ALJ went on to relate that, in July 2018, plaintiff's treating physician reviewed the MRI and said the herniations were really not too bad. Straight leg raise testing was positive on the right side, plaintiff walked with a limp, and lumbar range of motion was reduced. (R. 28). Plaintiff had a third injection in September 2018. Plaintiff continued physical therapy and, in December 2018, reported that he was feeling stronger and a lot better overall, that physical therapy had helped and he was caring for ten children, but he still had a lot of pain in the mornings. Upon exam, plaintiff's treating physician noted he appeared to be in moderate distress. Straight leg raise testing was positive on the right side, gait was antalgic, and range of motion was reduced in the lumbar spine. Exam was essentially unchanged in January 2019 and March 2019. (R. 29).

The ALJ noted that plaintiff had an examination in connection with his workers' compensation claim in March 2019. Plaintiff reported back reported back pain when he rose from a chair and with straight leg raise testing. Strength diffusely decreased strength in his right leg and normal in his left. Faber testing was negative bilaterally and there was decreased sensation in his right thigh, but no other sensory abnormalities. The doctor's impression was right lumbar

radiculopathy and degenerative disc disease of the lumbar spine and, in his opinion, the plaintiff was unable to return to work as of the date of exam and that he should remain temporarily and totally disabled from his work until his pain was better.  (R. 29).

The Plaintiff had another MRI in March 2019.  The study showed herniations at the L4-5 and L5-S1 levels of the lumbar spine with mild multilevel spondylosis, no evidence of central canal or lateral recess stenosis at any level of the lumbar spine, and mild foraminal stenosis at the L5-S1 level of the lumbar spine.  Plaintiff underwent a discogram and discectomy on April 25, 2019 and had to wear a back brace for four weeks.  In May 2019, plaintiff reported that overall, he was doing much better and that he only rarely had pain down his right leg.  He continued to report back pain and that he could not bend forward or backward too far.  Upon exam, plaintiff appeared to be in moderate distress.  Straight leg raising was negative on the right side, gait was antalgic on the right side, and range of motion was reduced in his lumbar spine.  The doctor said plaintiff could restart physical therapy, but remain off work to recover.  Exam was unchanged at a followup in June 2019.  (R. 29-30).

At an exam in July 2019, there was tenderness in the lumbar spine and right buttocks, with decreased range of motion, but strength, reflexes, and sensation were normal.  An MRI showed marked straightening of the lumbar lordotic curvature, broad-based diffuse disc bulges at the L3 through S1 levels, moderate impingement of the left L4 nerve root bilaterally and the exiting L5 left side nerve root.  Plaintiff had another injection in August 2019.  Plaintiff's physical therapist reported that plaintiff was significantly limited in his functional abilities due to an inability to tolerate weight bearing.  He noted that the plaintiff worked through pain during the exam with poor mechanics and did not meet any physical demand level. (R.30).

The ALJ then noted that, on September 20, 2019, plaintiff's treating physician said he could return to work at a sedentary job that allowed him to alternate positions every thirty minutes and that he could not lift or carry more than twenty-five pounds. The doctor reiterated these work restrictions in October 2019. Also at that time, plaintiff had a second workers' compensation review and exam. The doctor reported that plaintiff walked with a limp. Straight leg raising was positive on the right and negative on the left, motor strength was 4/5 in the right leg and Faber testing was negative. There was reduced sensation in the right thigh and lower leg. The doctor felt plaintiff had not achieved maximum medical improvement and could not provide an impairment rating or disability rating. (R. 30).

In August 2020, plaintiff's treating physician noted the plaintiff was limping on the right, but that his range of motion was much better. Strength was reduced in his right leg and there was severe in the lumbar region. Exam was unchanged in October 2020 and November 2020. In the early months of 2021, exams showed improved range of motion, but continued weakness in the right leg and tenderness in the lumbar region (R. 31).

The ALJ moved on to summarize plaintiff's February 2021 consultative physical exam. Plaintiff's gait was antalgic, and he was unable to perform heel and toe walk testing or hop or stand on his right leg alone. Range of extension in his lumbar spine was reduced by ten degrees, flexion was reduced in his right knee, but there was a normal range of motion in all other areas. Straight leg raise was positive on the right side, and the doctor reported that plaintiff could he could walk greater than fifty feet without support. Motor strength was 4/5 in the right leg motor but normal in all other areas. Romberg test was negative, sensation was normal, reflexes were normal, and mental status was normal. The doctor's impression was low back pain with right radiculopathy. (R. 32).

7

The ALJ completed his review of the record by adding that plaintiff continued to see his treating physician through November 2021. Exams showed his range of motion had but improved, he still had weakness in his right leg and tenderness in his lumbar region. Plaintiff continued to walk with a limp, but straight leg raise testing was negative. Plaintiff's treating doctor repeatedly noted that ambulation had improved in 2021. (R. 32).

The ALJ then assessed the medical opinions in the record. The ALJ rejected the opinion from the state agency reviewing psychologist that plaintiff had moderate limitations in interacting with others and concentrating, persisting or maintaining pace and was limited to work involving short and simple instructions and work involving only one to two-step tasks. The ALJ said it was not persuasive because it was not well supported, inconsistent with the evidence, and internally inconsistent. (R. 33). The ALJ found the opinion from the state agency reviewing physician that plaintiff could perform light work somewhat persuasive. The ALJ said it was consistent with the medical evidence at the time, but that further evidence supported more restrictive postural limitations and a sit/stand option. Therefore, the ALJ felt the opinions provided by plaintiff's neurosurgeon and his physician's assistant regarding plaintiff's need to alternate positions to alleviate his back pain more persuasive. (R. 33).

Next, the ALJ considered the opinion from the second state agency reviewing physician that plaintiff could only stand and/or walk for a total of two hours in an eight-hour day. The ALJ found it not persuasive, explaining that it was not well supported, inconsistent with the medical evidence, and relied too heavily on the one-time consultative exam. (R. 33-34). The ALJ rejected the notes from the occupational health center, saying they were not well supported, inconsistent with the overall record, and indicated limitations that were intended to be temporary in nature. (R. 34).

8

The ALJ then considered a number of opinions from plaintiff's treating physician and physical therapist. He noted that multiple opinions were "on an issue reserved to the Commissioner of Social Security, the ultimate issue of disability" and did not evaluate them. (R. 34). The ALJ did evaluate the plaintiff's treating doctor's opinions that plaintiff was limited to a desk job and permanently limited to sedentary work with alternation of body positions every thirty minutes and no carrying or lifting over twenty-five pounds. The ALJ found the opinion that plaintiff could perform light work and was limited to work with a sit/stand option persuasive as they are well supported and consistent with the longitudinal medical evidence and supported by treatment notes. The ALJ rejected the opinion that plaintiff was permanently limited to sedentary work because it was not well supported by treatment notes. (R. 34).

Finally, the ALJ considered the opinions from plaintiff's neurosurgeon and physician's assistant that plaintiff was limited to light duty work with no bending or twisting more than three times an hour and with the option of alternating between sitting and standing every thirty to forty-five minutes. The ALJ said the limitation to light work with a sit/stand option persuasive as it was well supported and consistent with the treatment for plaintiff's back condition. But, the ALJ rejected the opinion that the plaintiff could not bend or twist more than three times an hour as inconsistent with the longitudinal medical evidence. (R. 34-35).

The ALJ then relied on the vocational expert's testimony to conclude that, while plaintiff could not perform his past work as an industrial truck operator or fence erector because those jobs were beyond his exertional capacity. (R. 36). But, there were other jobs in the national economy that plaintiff could perform, such as: storage rental clerk (D.O.T. # 295.367-026) with 59,000 jobs nationally; office helper (D.O.T. #239.567-010) with 97,000 jobs nationally; and information clerk

(D.O.T. # 237.367-018) with 54,000 jobs nationally. Accordingly, the ALJ found the plaintiff not disabled and not entitled to benefits under the Act. (R. 37).

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r Of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of

choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Hightshoe v. Kijakazi*, _F.4th_, 2023 WL 3531473, at *1 (7th Cir. 2023); *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Hightshoe, supra.*; *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 (". . . the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis.").[2]

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might

---

[2] *Compare Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

  
see a trickle of a creek they can hop across with barely a splash.[3] But, the Seventh Circuit has also called this requirement "lax." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[4] The ALJ has done enough here.

---

[3] By way of example, in the Seventh Circuit's ruling in *Jarnutowski*, 48 F.4th 769, two judges on the panel felt the ALJ had not adequately explained aspects of her reasoning while a third judge, dissenting, thought she did. The Magistrate Judge who reviewed the ALJ's decision at the district court level also felt the ALJ had adequately explained her reasoning. *Donna J. v. Saul*, No. 19 C 2957, 2021 WL 2206160, at *8 (N.D. Ill. June 1, 2021).

[4] Prior to *Sarchet*'s "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly,

(continued...)

## III.

The plaintiff has two issues with the ALJ's decision. First, he argues that the ALJ did not address the discrepancy between her conclusion that he could alternate between sitting and standing for five minutes after every 30 minutes, and the requirements from Drs. Xia and Salehi, respectively, that plaintiff must be able to "alternate body positions every 30 minutes," or "alternate sit/stand every 30-45 minutes," respectively. And, second, he contends that ALJ improperly discounted his subjective symptom allegations. Any other arguments plaintiff might have raised are deemed waived. *Milhem v. Kijakazi*, 52 F.4th 688, 693 (7th Cir. 2022); *Jeske v. Saul*, 955 F.3d 583, 597 (7th Cir. 2020).

## A.

We begin with the opinions from Dr. Salehi and Dr. Xia. In June of 2018, Dr. Sean Salehi reviewed the plaintiff's March 2018 MRI, noting it revealed T2 signal loss L3-4 through L5-S1, small central herniated disc at L5- S1, and mild circumferential disc bulge at L4-5 without neural compression, and mild bilateral facet arthropathy at L4-5 and L5-S1. He also made note of an April 2018, EMG (showing right L4-5/L5-S1 and left L4-5 radiculopathy), and a normal lumbar spine x-ray (showing no scoliosis). Dr. Salehi said that "(f)or now [plaintiff] can work at a light duty capacity of no lifting > 20 lbs., no push/pull > 35 lbs., no bend/twist > 3 times per hour and ability to alternate sit/stand every 30-45 minutes." (R. 892).

In September 12 and 20, 2019, Dr. Xia wrote notes releasing the plaintiff for work in a

---

[4](...continued)
   uncontradicted evidence that supports the claim for benefits.

766 F.2d at 287 (citations omitted). Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

"sedentary job that allows alternate body position every 30 minutes and also no lifting/carrying over 25 lbs." (R. 1018-19). He wrote the same notes again in October 2019, February 2020, and March 2020. (R. 1042-43, 1048).

The ALJ found Dr. Salehi's opinion that the plaintiff was "limited to light work with a sit/stand option every thirty minutes . . . persuasive as [it was] well supported and consistent with the [plaintiff's] treatment for his back condition." But the ALJ parted company with Dr. Salehi over the matter of plaintiff being unable to "bend or twist more than three times an hour," because the ALJ thought that portion of Dr. Salehi's opinion was inconsistent with the "longitudinal medical evidence." The ALJ said that while the opinion might have been well-supported at the time it was issued, the subsequent exams performed by Dr. Xia showed the improvement of the plaintiff's range of motion with treatment. (R. 34-35).

The ALJ rejected that portion of Dr. Xia's opinion that limited plaintiff to "sedentary" work. (R. 34). Obviously, the capacity to lift and carry up to 25 pounds – which Dr. Xia said plaintiff could do – goes well beyond the lifting and carrying limits of sedentary work and does not contradict the ALJ's RFC finding that plaintiff could perform the lifting and carrying facets of light work. *Jarnutowski*, 48 F.4th at 774 ("[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."); 20 C.F.R. §§ 404.1567(b); 416.967(b). As for the other requirements of sedentary work – 20 C.F.R. §§ 404.1567(a); 416.967(a)("Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.") – the ALJ explained that Dr. Xia's own treatment notes indicated plaintiff was "able to walk unassisted, he had no muscle

14

atrophy and that he reported improvement in his symptoms over the period at issue." (R. 34).

After the ALJ's thorough review of the medical record – and the many, sometimes confusing medical opinions – she limited the plaintiff to work with a sit/stand option such that every thirty minutes he is allowed to alternate between sitting or standing for five minutes. (R. 26). The plaintiff's issues with the ALJ's treatment of the two doctors' opinions require careful assessment. First, there are what we'll call the sit/stand option portions of the two doctors' opinions. The plaintiff argues that the ALJ failed to address the discrepancy between her conclusion that the plaintiff could alternate between sitting and standing for five minutes after every 30 minutes, and the requirements from Drs. Xia and Salehi, respectively, that plaintiff must be able to "alternate body positions every 30 minutes" or "alternate sit/stand every 30-45 minutes." For the plaintiff, the restrictions mean that he must sit for 30 minutes, then stand for 30 minutes, over and over again throughout the workday. The plaintiff argues that the ALJ got it wrong by interpreting it as changing position for only 5 minutes every 30 minutes. [Dkt. #12, at 9].

While Dr. Xia may not have been overly artful in writing up his notes, putting all of his restrictions together, the ALJ's interpretation makes more sense than the plaintiff's. As already suggested, Dr. Xia swerved in and out of the sedentary work lane. Folks rarely sit at a desk while lifting 25 pounds all day. And if he meant 30 minutes of sitting followed by thirty minutes of standing and walking – essentially, standing and walking half the day – that's not sedentary work, it's light work. So, taking Dr. Xia at his word – that word being "sedentary" – it makes much more sense that he didn't mean the plaintiff could stand and walk for half of every workday. He much more likely meant plaintiff had to change positions briefly for some relief twice an hour.

Moreover, we have to agree with the Commissioner [Dkt. #16, at 6] that if this was such an

important point that it has to be raised in federal district court, why not raise it at the administrative hearing? Plaintiff's counsel questioned the vocational expert rather thoroughly regarding the "5-minutes-every 30-minutes" sit/stand option at plaintiff's hearing and never once suggested it ought to be 30 minutes of standing followed by 30 minutes of sitting all day long. (R. 81-84). By all rights, the issue should be considered waived. *See, e.g., Leisgang v. Kijakazi*, – F.4th –, –, 2023 WL 4188500, at *2-3 (7th Cir. June 26, 2023)(discussing waiver and exhaustion of arguments at the administrative level in the contest of vocational evidence); *Wood v. Thompson*, 246 F.3d 1026, 1033 (7th Cir. 2001)("He did not rely on this policy in his arguments before the ALJ or the Medicare Appeals Council, and he has therefore waived this argument."); *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)("... at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal."); *United States v. Menendez*, 48 F.3d 1401, 1413 (5th Cir. 1995)("... the doctrine of waiver in administrative law parallels the well-established rule that appellate courts will not consider arguments not raised before the trial court."); *Eagle Eye Fishing Corp. v. U.S. Dep't of Com*., 20 F.3d 503, 505 (1st Cir. 1994)("The doctrine of administrative waiver is a subset of the broader doctrine of procedural default. It teaches that, '[i]n the usual administrative law case, a court ought not to consider points which were not seasonably raised before the agency.' "). And, no, contrary to plaintiff's rather generous interpretation [Dkt. #17, at 3], asking about a restriction requiring whether potential jobs would be eliminated if the plaintiff had to "change positions from sitting to standing for 5 minutes every 15 minutes" (R. 83), is not the same thing. It's a restriction plaintiff's counsel made up from whole cloth and clearly it would be far more disruptive than changing positions every half hour, whether for five minutes or thirty.

16

Next, the plaintiff complains that the ALJ improperly rejected Dr. Salehi's limitation to bending or twisting no more than three times per hour. The ALJ said the restriction was inconsistent with the medical record, which showed plaintiff's range of motion improved with ongoing treatment, albeit with tenderness in the lower back and sacroiliac joint region, and cited a number of exam reports (R. 35):

> March 13, 2020 – ROM is much better, extension full, flexion to 45 degrees. ambulation is better. SLR negative in both legs" (R. 1046); extension full, flexion 45 degrees (R. 1136).

> August 21, 2020 – Extension 10 degrees, flexion full (R. 1467).

> July 21, 2020 – Extension 10 degrees with pain, flexion full (R. 1471).

> February 9, 2021 – He has difficulty in bending, twisting, lifting, pushing and pulling (R. 1564); The range of motion of the lumbar spine was reduced. Flexion was equal to 80 degrees. Straight leg raise test: positive on the right side. (R. 1566).

> March 16, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1586).

> February 15, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1588).

> October 2, 2020 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1593).

> April 20, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1745).

> May 18, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1747).

> June 15, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral

17

lumbar region and SIJ tenderness. (R. 1749).

July 13, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1751).

August 17, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1754).

September 17, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1757).

October 15, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1760).

November 16, 2021 – Extension to 10 degrees with pain reproduced, flexion to 90 degrees. ambulation is better. SLR negative in both legs; severe tenderness at paravertebral lumbar region and SIJ tenderness. (R. 1762).

    Those reports are not anomalies; they are merely a small sampling of similar reports as was noted earlier. Although Dr. Xia invariably said, at every visit, that plaintiff's range of motion had improved, it seems more accurate to say it was essentially stable at 10 degrees extension and 90 degrees flexion.[5] A full ability to bend forward and a limited ability to bend backward – which, it would seem, would be required only rarely – does not indicate a limitation to bending or twisting no more than three times per hour. *See, e.g., Albert*, 34 F.4th at  614 (". . . the 'most important factors' are a medical opinion's 'supportability' and 'consistency' with the evidence in the record.");

_____

    [5]Dr. Xia's questionable rhetorical skills threw one additional monkey wrench into the medical opinion works. He wrote, more than once, that his restrictions were based on the August 2019 functional capacity evaluation from the plaintiff's physical therapist. (R. 1020, 1043, 1474). But, that was clearly not the case as Dr. Xia's opinion has little to do with what the physical therapist's, which placed much more significant restrictions on the plaintiff: lift up to 20 pounds only rarely, sit for 10-minute intervals, stand for 2-minute intervals, and walk for 2-minute intervals. (R. 1452-53). Dr. Xia clearly scaled back those restrictions based on his examination findings which detailed  significant improvement relative to the physical therapist's findings.

18

*Grotts*, 27 F.4th at 1277 (in rejecting doctor's opinion, ALJ explained why it is inconsistent with the medical evidence).

That brings us to Dr. Salehi. Plaintiff argues that Dr. Salehi "did not link the limitation to [plaintiff's] range of motion." [Dkt. #12, at 10]. But Dr. Salehi didn't link the limitation to anything else, either. (R. 890-92). *See Bakke*, 62 F.4th at 1068 (7th Cir. 2023)(ALJ properly rejected opinion where doctor "failed to explain the link between the medical evidence she listed and the recommended work restrictions."). And, the doctor made it clear the restriction was temporary – "for now"(R. 892) – and, indeed, flexion at the time was limited to only a third of normal (R. 891) while, as the ALJ showed, it has improved to normal thereafter.

Finally, plaintiff turns to the ALJ's consideration of the March and October 2019 workers' compensation exams and the August 2019 functional capacity evaluation. In March 2019, Dr. Slack said he "recommend[ed] the [plaintiff] remain temporarily totally disabled from his work . . . ." (R. 1289). And a few months later, in October 2019, the doctor said plaintiff was "temporarily totally disabled from any work activity until he has better pain control." (R. 1698). The plaintiff complains that, while the ALJ discussed these pieces of evidence (R. 29-30), she failed to adequately address the persuasiveness of those opinions. But, as the ALJ explained, the opinions were on a matter reserved for the Commissioner. (R. 34). *See* 20 C.F.R. §416.920b(c)(3)(specifying that "[s]tatements that you are or are not disabled," or statements about whether an individual can or cannot work constitute evidence that "is inherently neither valuable nor persuasive"); *Albert v. Kijakazi*, 34 F.4th 611, 616 (7th Cir. 2022)(". . . the ultimate determination of disability is reserved for the Commissioner, and summarily asserting that the claimant is disabled does not suffice under the Commissioner's regulations."); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("A claimant,

however, is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' ").

In the end, it's important to recall that neither of plaintiff's two main treating physicians – Drs. Xia and Salehi – suggested he was disabled from all work, just the strenuous work he had been doing. The same could arguably be said of Dr. Stack, who said plaintiff was disabled from *his* work. Providing a rather thorough discussion and analysis of the many medical opinions in this case – opinions that were sometimes confusing and contradictory – the ALJ did yeoman's work. It was the ALJ's responsibility to sift through all the medical opinions and resolve discrepancies. *Jeske*, 955 F.3d at 592; *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). At the very least, she met the requirement that she minimally articulate her reasoning. *Grotts*, 27 F.4th at 1276. (7th Cir. 2022); *Skarbek v. Barnhart*, 390 F.3d 500, 503–04 (7th Cir. 2004).

## B.

The plaintiff's other problem with the ALJ's decision is the way the ALJ assessed the plaintiff's complaints of pain. The plaintiff thinks the ALJ improperly discounted his subjective symptom allegations. But, as long as an ALJ gives specific reasons supported by the record, the court cannot overturn a credibility determination unless it is patently wrong. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021); *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). For obvious reasons, "[s]ubjective statements by [plaintiffs] as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278. Indeed, a contrary rule would require in every case that the plaintiff's contentions be deemed and accepted as true thereby making the trial, itself, unnecessary.

Here, the ALJ explained that the plaintiff's subjective complaints were out of proportion with the medical record, and that plaintiff's statement regarding his pain and treatment results were inconsistent. Both of these are valid reasons for discounting a plaintiff's allegation. *See, e.g., Grotts*, 27 F.4th at 1279(objective medical evidence and inconsistent statements); *Zoch*, 981 F.3.d at 601 (same).

As the ALJ detailed throughout her opinion and in her assessment of the plaintiff's complaints, the main problem with the plaintiff allegations is that they are out of proportion with the medical evidence. Again, neither his treating doctor nor his neurosurgeon felt he was disabled, just unable to return to his previous manual labor. They consistently described his disc herniations as "small" or "really not too bad." (R. 892, 934, 1056, 1075, 1094, 1688, 1757). And, visit after visit, exam after exam, depicts improvement with treatment, including full lumbar flexion and better ambulation, albeit with a limp. (R. 1590, 1593, 1595, 1597, 1599, 1602, 1604, 1606, 1609, 1612, 1616, 1625, 1627, 1630, 1640-41, 1642, 1644, 1647, 1649, 1651, 1743, 1745, 1747, 1749, 1751, 1754, 1757, 1760, 1762). So, in this case, it was entirely proper for the ALJ to note that there were "discrepancies between the objective evidence and self-reports [which] may suggest symptom exaggeration." *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018); *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). Indeed, given the record, it would have been difficult to say otherwise.

Much the same can be said of the ALJ's reliance on the plaintiff's inconsistent statements. As the ALJ explained, while the plaintiff claimed at his hearing that his symptoms did not improve with treatment, Dr. Xia consistently and repeatedly said they did. (R. 1590, 1593, 1595, 1597, 1599, 1602, 1604, 1606, 1609, 1612, 1616, 1625, 1627, 1630, 1640-41, 1642, 1644, 1647, 1649, 1651,

1743, 1745, 1747, 1749, 1751, 1754, 1757, 1760, 1762). Interspersed among all those reports of improvement were plaintiff's reports that he was happy with results of injections (R. 1023, 1640), or pain free and very happy (R. 1623), or improved and very happy (R. 1625), or that physical therapy was "too soft on him" (R. 1680), or that he was doing great until he fell again. (R. 1634-36 1646). He even contradicted himself regarding his storage locker enterprise. He told his doctor he was making money (R. 1589); he told the ALJ he never did. (R.63).

In the end, no one is saying that the plaintiff didn't injure his back or that he doesn't experience pain, just that the degree of the symptoms he complained of was out of proportion with the rest of the evidence. Pain, in and of itself, does not necessarily render an individual disabled. *See, e.g., Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010)(affirming ALJ's decision and noting that "[d]isability requires more than mere inability to work without pain."); *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989)("Even if [plaintiff] did experience some discomfort, this alone does not establish disability."); *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986) ("disability requires more than mere inability to work without pain"). Indeed, plaintiff's own doctor and surgeon did not think his condition left him unable to do any work. (R. 892, 1018-19, 1042-43, 1048).

The plaintiff may disagree with the ALJ's view of the evidence or even with his own physician's assessment of his condition, but that does not mean the ALJ's decision to deny him benefits was not supported by "substantial evidence." *See Karr*, 989 F.3d at 513 ("Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence."); *Zoch*, 981 F.3d 602 ("Finally, even if reasonable minds could differ on the ALJ's rejection of [plaintiff's] testimony, we will not reweigh evidence or substitute our judgment for the ALJ's.").

22

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. #15] is granted, and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7-14-23

23